IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GLOBAL COMMUNICATIONS, INC.,

    Plaintiff,

v.                                       CASE NO.  4:12cv651-RH/CAS

DIRECTV, INC. et al.,

    Defendants.

_____/

### ORDER GRANTING SUMMARY JUDGMENT IN PART

This is a patent-infringement case.  Now pending is a defense summary-judgment motion that presents two issues.

The first is whether the patent holder's covenant not to sue a business that uses its patents—a covenant that as a matter of law is the equivalent of a license authorizing the business to use the patents—carries with it "have-made rights," thus allowing the business to have equipment using the patents manufactured by others, and insulating those others from an infringement claim.  This order denies summary judgment on this issue because the covenant not to sue, when considered

together with the entire agreement of which it is a part, can best be read to show a clear intent *not* to provide have-made rights, and the parol evidence in this record, when taken in the light most favorable to the patent holder, is consistent with that reading.

The second issue is whether the patent holder can sue the party it covenanted not to sue. The answer is no. This order grants summary judgment on this issue.

I

On a summary-judgment motion, disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of the nonmoving party. The moving party must show that, when the facts are so viewed, the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

II

The plaintiff Global Communications, Inc. ("Global") holds patents that are useful in the provision of commercially viable satellite television service. The patents include U.S. Patent No. 5,073,930 ("the '930 patent") and a set of others ("the single-wire patents"). The single-wire patents allow a single satellite dish to feed multiple television sets that each can be tuned to a different station.

The defendants DirecTV, Inc. and DirecTV Group, Inc. operate a satellite television system that uses the patents.  This order refers to either or both of these entities as "DirecTV" and makes no effort to identify the specific roles of each.

In 2004 Global sued DirecTV in this district for infringing the '930 patent.  The parties entered a written settlement agreement, sometimes referred to in this order—and by the parties—as the "2004 agreement."  Under that agreement, DirecTV made a substantial lump-sum payment to Global, and Global permanently licensed the '930 patent to DirecTV, on specific terms.  That license and those terms are not now at issue.

The 2004 agreement also included three covenants addressing the single-wire patents.

In the first covenant, set out in section 8(a) of the 2004 agreement, the beneficiary was DirecTV itself.   Global covenanted not to sue DirecTV itself for infringing the single-wire patents.  The covenant looked both backward and forward; it applied to equipment manufactured and systems put in place both before and after the effective date of the 2004 agreement.

In the second covenant, set out in section 8(b)(1), the beneficiaries were DirecTV "supporting parties"—defined broadly to include equipment manufacturers, suppliers, distributors, subscribers, and others who, in connection with DirecTV's business, might use the single-wire patents.  Global covenanted

not to sue a DirecTV supporting party for infringing the single-wire patents in connection with equipment in existence or systems in place *prior to the effective date of the 2004 agreement*. The covenant did not apply to equipment manufactured or systems put in place *in the future*. The covenant thus looked backward, not forward.

The third covenant, set out in section 8(b)(2), was different; it looked only forward. It applied to equipment manufactured and systems put in place *after* the effective date of the 2004 agreement. The beneficiaries were again DirecTV supporting parties. Global covenanted that, if Global believed a DirecTV supporting party was infringing a single-wire patent, Global would offer the supporting party a nonexclusive, nontransferable license, on fair and nondiscriminatory terms, at a royalty not exceeding 3% of the infringing equipment's sales price. The covenant provided further that if Global could not reach an agreement with the supporting party, Global would offer an analogous license to DirecTV itself.

III

In 2011, Global filed a patent-infringement claim in this court against four DirecTV distributors—entities that, among other things, obtained equipment from or through DirecTV and distributed it downstream in the DirecTV "supply-chain operation" for eventual use by DirecTV subscribers. The distributors obtained a

ruling that they did not infringe the single-wire patents by distributing equipment obtained from or through DirecTV. Two principles led to the ruling.

First, "[t]he longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008). Second, "an unconditional covenant not to sue authorizes sales by the covenantee for purposes of patent exhaustion." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1274 (Fed. Cir. 2009). "Under *TransCore*, Global's covenant not to sue DirecTV authorized DirecTV to sell equipment using the single-wire patents. Under *Quanta*, this terminated Global's patent rights to equipment sold by DirecTV." *Global Commc'ns, Inc. v. PDI Commc'ns, Inc.*, No. 4:11cv541 (N.D. Fla. May 21, 2012) (unpublished order), *aff'd without opinion*, 503 F. App'x 951 (Fed. Cir. 2013).

So DirecTV can sell equipment using the single-wire patents to distributors for eventual use by DirecTV subscribers. Global cannot sue either DirecTV or the distributors for using the single-wire patents in this way. Global is not entitled to a royalty on these transactions. The earlier lawsuit settled all this.

IV

This case is different. Global now focuses on the activities of *upstream* manufacturers or suppliers—entities that, at DirecTV's request, manufacture or

supply equipment for sale to DirecTV or DirecTV distributors. Global asserts patent-infringement claims against 23 upstream manufacturers or suppliers. And Global asserts claims against DirecTV itself on theories of breach of contract, breach of a covenant of good faith and fair dealing, patent infringement, and inducing or contributing to the upstream entities' patent infringement.

Global's patent-infringement claims against the upstream entities are not barred by the doctrine of patent exhaustion, because the challenged conduct precedes and then comprises the first sale. The issue is whether the first sale constitutes infringement.

DirecTV says the answer is no. DirecTV says the first covenant is equivalent to a license, as was squarely held in the last litigation between these parties in this court, and that the license gives DirecTV not only the right to use the patents when DirecTV itself manufactures equipment, but also the right to have equipment made by others, for purchase by DirecTV or its distributors.

DirecTV first asserted these contentions in a motion for judgment on the pleadings. An order denying the motion set out this analysis:

> A license is a contract. Whether a license encompasses "have-made" rights is a question of contract interpretation. In this case the contract—that is, the 2004 agreement—was entered in Florida. Florida law thus governs its interpretation.
>
> Florida's common-law principles of contract interpretation apparently are the same as Utah's. The parties have cited no differences. Applying Utah law, the Federal Circuit has held that a

> license conveying the "right to 'make, use, and sell' a product inherently includes the right to have it made by a third party, *absent a clear indication of intent to the contrary*." *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072-73 (Fed. Cir. 2009) (emphasis added). This is the standard that applies in this case.
>
> The best reading of the 2004 agreement, on its face, is that the parties intended DirecTV *not* to acquire have-made rights. The best indication of that intent is the third covenant, as set out in the agreement's section 8(b)(2). That section plainly obligated Global to provide a reasonable license to manufacturers in precisely this position, allowing them to manufacture equipment precisely as Global says they are now doing. Including a provision for a reasonable license is inconsistent with any intent to allow the manufacturers to do this same thing without a license.
>
> Still, the 2004 agreement is sufficiently ambiguous to allow parol evidence on this point. Global says the parties' practical construction of their own agreement, as manifested in a 2007 license agreement, confirms Global's position. DirecTV says, in contrast, that section 8(b)(2) applies to other circumstances and is not inconsistent with the conveyance of have-made rights. Time will tell. For now, it is clear that DirecTV is not entitled to a judgment on the pleadings establishing that the manufacturers have not infringed the single-wire patents.

Order Den. the Mot. for J. on the Pleadings 6-7, August 21, 2013, ECF No. 50.

V

DirecTV now has renewed its arguments in a summary-judgment motion. The record includes substantial parol evidence. Some points each way. What was said in the August 21 order remains true: the best reading of the 2004 agreement, on its face, is that the parties intended DirecTV *not* to acquire have-made rights. And now this can be added: when factual disputes are resolved, and reasonable

inferences are drawn, in Global's favor, the record indicates that the parties intended DirecTV *not* to acquire have-made rights.

The most important bases for this conclusion are the language of the 2004 agreement, the agreement's inclusion of section 8(b)(2), and the parties' 2007 agreement. Other evidence supports the result. DirecTV strains to explain how section 8(b)(2) and the 2007 agreement can be consistent with DirecTV's theory that the 2004 agreement gave DirecTV have-made rights. But the most obvious explanation—one sufficient to defeat summary judgment—is that when entering the 2004 agreement, the parties did not intend to afford DirecTV have-made rights.

It is true, as *CoreBrace* said, that a license conveying the "right to 'make, use, and sell' a product inherently includes the right to have it made by a third party, absent a clear indication of intent to the contrary." *CoreBrace*, 566 F.3d at 1072-73. The 2004 agreement did not explicitly give DirecTV the right to "make, use, and sell" products employing the single-wire patents. Instead, the 2004 agreement included only a covenant not to sue. As it turned out, the Federal Circuit ruled later that, for patent-exhaustion purposes, the covenant was equivalent to a license. *TransCore*, 563 F.3d at 1274. On one view, this gave DirecTV and its downstream suppliers more than they bargained for. Whether that is so or not, it was most assuredly an odd way to craft section 8 of the 2004 agreement if what the parties really meant was that DirecTV was to acquire not

only a license but also have-made rights. In any event, this record includes evidence clearly indicating an intent not to afford DirecTV have-made rights.

DirecTV is not entitled to summary judgment on this issue.

## VI

This does not mean, however, that Global can sue DirecTV based on the upstream manufacturers' use of the single-wire patents. By the 2004 agreement, DirecTV bought its peace from claims of infringement of the single-wire patents. Global's covenant not to sue DirecTV on such claims was clear and unequivocal. The covenant provided that Global would "forever refrain" from suing DirecTV or any DirecTV subscriber "based, in whole or in part, on the alleged infringement of the Single Wire Patent Rights." 2004 Agreement 25 (¶ 8(a)), ECF No. 66-1. The language leaves no room for the claims Global now asserts for direct infringement, inducing infringement, or contributory infringement.

Nor can Global sue DirecTV on its breach-of-contract theory. Global's theory is that the 2004 agreement allowed DirecTV to obtain in a specified manner a license for the single-wire patents and that this created an implied contractual obligation to use the patents only under such a license.

Some courts have found in a license agreement an implied contractual obligation not to use a patent more broadly than authorized by the license agreement. These courts have allowed a patent holder to maintain an action not

only for patent infringement but also for breach of contract. *See, e.g.*, *Aktiebolaget Bofors v. United States*, 194 F.2d 145, 148 (D.C. Cir. 1951); *Shaw v. E. I. DuPont De Nemours & Co.*, 226 A.2d 903, 906-07 (Vt. 1966). Other courts have disagreed. *See, e.g.*, *Mayo Clinic Jacksonville v. Alzheimer's Institute of Am., Inc.*, 683 F. Supp. 2d 1292, 1299 n.10 (M.D. Fla. Nov. 24, 2009); *Eli Lilly & Co. v. Genetech, Inc.*, Nos. IP 87-219-C, IP 8-1463-C, 1990 WL 305392, at *3-5 (S.D. Ind. July 17, 1990) (collecting cases).

The issue makes no difference here. Even if such a contractual obligation ordinarily could be implied from a *license agreement*, no such implication would be permissible from the *covenant not to sue* at issue here. In the 2004 agreement, Global unequivocally covenanted not to sue DirecTV based, in whole or in part, on the alleged infringement of the single-wire patents. Global's breach-of-contract claim is based at least in part on the alleged infringement of the single-wire patents; without infringement, the breach-of-contract theory goes nowhere. World-class legal alchemy would be required to infer from the 2004 agreement, with its express covenant not to sue, a contractual right for Global to sue DirecTV for misuse of the single-wire patents.

That DirecTV did not breach the contract also means it did not breach any attendant covenant of good faith and fair dealing. Under Florida law, such an implied covenant exists only in tandem with an express term of the contract. A

party who can point to no breach of contract cannot pursue a claim for breach of an implied covenant of good faith and fair dealing. *See, e.g.*, *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005).

In sum, Global cannot recover on any of its claims against DirecTV itself.

## VII

For these reasons,

IT IS ORDERED:

DirecTV's summary-judgment motion, ECF No. 63, is GRANTED IN PART and DENIED IN PART. Global's claims against DirecTV are dismissed with prejudice. Global's claims against the other defendants remain pending. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

SO ORDERED on February 28, 2014.

> s/Robert L. Hinkle
> United States District Judge